Hegele Unemployment Compensation Case.

Argued March 22, 1950. Before Rhodes, P. J., Hirt, Reno, Ross and Arnold, JJ. (Dithrich, J., absent).

*Sydney Finkelstein,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Richard H. Wagner,* Associate Counsel, *Roland M. Morgan,* Associate Counsel and *T. McKeen Chidsey,* Attorney General, for appellee.

OPINION BY ARNOLD, J., July 20, 1950:

In this unemployment compensation case the Unemployment Compensation Board of Review denied relief to the claimant, who appealed to this Court.

The claimant was an employe of the John B. Stetson Company which manufactured hats. During the last three years of her employment she was a sewing machine operator, placing outside bands and bows on hats.

In February, 1948, a new method was installed by her employer, by which the hats travelled upon a track, a sort of assembly line. By arbitration between the employes' union and the company there was established a wage scale based on piecework. The claimant and three other employes were dissatisfied, and in December of 1948 the company told them that it would arrange a transfer for them. She refused to accept such transfer. Later in December of 1948 the production requirement of the operators (including the claimant) was reduced from 34 to 27 dozen, and the operators were to place cords and buttons on the hats. The rate remained the same. She and certain other operators expressed further dissatisfaction, and were again offered a transfer. The operators were represented by their committeewoman, who informed the company that they did not desire a transfer.

During January, 1949, the company arranged for a transfer of the claimant, but the union objected because of seniority rights of another employe.

For a number of years the claimant had suffered from migraine headaches and nervousness. A year before her termination of employment she had requested a transfer, but nevertheless in December of 1948 she refused the two transfers which were offered her without any reduction in pay. According to the claimant she went home after work on January 14, 1949. On the following Monday she requested her committeewoman to report the claimant as sick. The committeewoman then advised

her that, because of the action of the union, she was not to be transferred but was to continue with her old work. She thereafter did not report for work nor communicate with any representative of the company.

The board made detailed findings of fact, and since there was ample, competent evidence to support such findings, they are binding on us. It found that her refusal to work was without "good cause" i.e., that the failure of the last transfer was not the cause of her leaving. The claimant had the burden of proof, and the credibility of the witnesses and the good faith of the parties being entirely for the triers of the facts, who found against her, the only question before us is whether there was a capricious disbelief of evidence. "Capricious disbelief is not merely disbelieving a witness. To constitute capricious disbelief there must be a wilful, deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth. To charge a judge with capricious disbelief, it must be so flagrant as to be repugnant to a man of reasonable intelligence": *Pusey's Estate,* 321 Pa. 248, 262, 184 A. 844. Obviously the disbelief of claimant's evidence was not capricious. See also *Silver Unemployment Compensation Case,* 167 Pa. Superior Ct. 345, 74 A. 2d 772.

Decision affirmed.